IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. A-14-CR-209 SS |
| | § | |
| JOSE SANTOS HERNANDEZ-ESQUIVEL | § | |

**ORDER**

Before the Court is the Motion for Reconsideration of Detention and Request for Rehearing (Dkt. No. 21). The Court held an evidentiary hearing on the motion on July 30, 2014. At the close of the hearing, the Court ruled from the bench, and **DENIED** the Government's motion. The Court stated its reasons for the denial in detail on the record, and incorporates that discussion here. This written order is entered to memorialize the Court's ruling, and to provide the parties and district judge a summary of the Court's reasoning in the event of an appeal.

**I. Background**

In brief, the Government based its original request for detention primarily on the assertion that the Defendant posed a risk of danger to the community. The Government did not call any witnesses at the first hearing, but rather proceeded by proffer. The proffered evidence, and the Government's concerns regarding public safety, all related to the Government's initial unsuccessful attempt to arrest the Defendant in April 2014. The attempted apprehension followed an anonymous tip submitted on ICE's webpage alleging that the Defendant was in the U.S. without permission, that he was abusive to his wife, and that he was a drug user. The Government stated that when agents, acting on the tip, attempted to arrest the Defendant in the early morning hours of April 11, 2014, he fled toward a bus stop where there was a parked school bus, along with parents and children. The bus driver allegedly saw a man with a gun as she approached the stop. The Government further

stated that it had concluded from its investigation that the man seen by the driver was in fact the Defendant while he was fleeing the ICE officers, and the bus driver saw the Defendant wait for the officers "ambush style" in bushes near the stop. Further, the Government stated that a deportation officer spoke to the Defendant's wife after he fled, and she admitted that she was the tipster.

The Defendant presented the testimony of the Defendant's wife at the original hearing. She testified that she was not the person who made the tip, and speculated that it could have been her mother who did so, as her mother does not like the Defendant. She also testified that the Defendant did not have a firearm on April 11, 2014, he did not use drugs, and he was not abusive to her. She asked that the Defendant be released on conditions to assist her and their children. The Defendant's attorney also proffered information that he had retained an immigration attorney who intended to file a request to reopen his deportation proceeding and he therefore had a strong incentive to appear for trial or other proceedings. The Pretrial Services report further reflected that the Defendant has a single criminal conviction for a misdemeanor illegal entry charge.

Based on this information, on July 21, 2014, the undersigned entered an order setting conditions of release for the Defendant. Shortly thereafter, the Government filed its motion asking the Court to reconsider the release of the Defendant and seeking the opportunity to present additional evidence.

That hearing took place on July 30, 2014. That hearing lasted nearly three hours, so the Court will not restate all of the evidence and testimony submitted, but will focus instead on the material aspects of the evidence. The Court heard the testimony of the deportation officer who both attempted to arrest the Defendant on April 11, 2014, and actually did arrest the Defendant on June 6, 2014, as well as the testimony of the bus driver who was driving the bus parked at the bus stop

on the morning of April 11, 2014, and who had seen a man with a gun that morning. The Defendant called an investigator from the Federal Public Defender's office who described in further detail the physical location of the events on April 11, 2014.

## II.  The Evidence

### A.  Did the Defendant flee from officers and brandish a firearm on April 11, 2014?

Having heard all of the testimony, and having considered the credibility of the witnesses and evidence, the Court does not believe there is persuasive evidence to support the Government's contention that the Defendant was in possession of a firearm on April 11, 2014, or that he was the "man with a gun" that the bus driver contends she saw that morning. The timing of when the bus driver stated she saw the man does not match where the Defendant would have been according to the testimony of the deportation officer. Rather, she stated she saw the man as she made a 180 degree turn to approach the bus stop, *before* she had parked the bus. The deportation officer testified that he abandoned his foot pursuit within seconds of starting to run because the Defendant was running toward a *parked* school bus with children around it. This means that the man seen by the bus driver could not have been the Defendant, as he did not even begin running toward the bus until it was already parked, which is 100 or more feet away from where the driver stated she saw the armed man. Further the driver denied ever telling anyone that the man reappeared from the woods and waited "ambush style." Instead, she testified she saw him back into the woods and never saw him come out. The officer, on the other hand, stated that he had been told by the APD officers who responded to the 911 call from the bus dispatcher, that the bus driver told the APD officer that the armed man came back out of the woods and hid with the gun in the bushes. Further, despite statements that the bus driver's description of the man she saw matched the general description of

the Defendant, at the hearing she stated that she could not identify the race or even the gender of the person she saw with the gun, though she was certain she saw a weapon.

The driver also testified that when she arrived at the bus stop, several parents told her that they too had seen a person with a gun, and they were very upset and the scene was chaotic. This does not line up with the deportation officer's testimony, given that if in fact there were concerned parents fleeing the bus stop back toward the apartments, they surely would have encountered the officer or he would have encountered them, as he was wearing a vest and badge identifying him as a police officer. The officer, however, did not state anything about seeing concerned or fleeing parents or children. Further, one would expect that multiple 911 calls would have been made if several parents had seen an armed man at a bus stop full of elementary school students, but there was no evidence of any 911 calls other than the bus dispatcher's. In addition, the officer testified that after he abandoned the pursuit he returned to the vehicle where he had found the Defendant and spoke to the Defendant's wife, and it was only when he received a call from the APD officers who had responded to the 911 call that he learned that someone claimed to have seen an armed man around the time he was pursuing the Defendant. It is very difficult to reconcile the bus driver's testimony of there being pandemonium at the bus stop, with the deportation officer apparently seeing no such chaos, and this calls into question what exactly the bus driver saw that morning.

On top of the above, the attempted arrest on April 11, 2014, took place immediately after the Defendant and his wife had taken their own children to the very same bus stop at issue. To believe the Government's case, the Court would have to believe that the Defendant was armed as he went to his construction job, which seems unlikely, and believe further that he fled from armed officers directly toward his own children with his gun drawn. At the end of the day, the evidence does not

4

provide any persuasive reason to believe that the Defendant possessed a gun on April 11, 2014, or that he was the alleged "man with a gun" that morning. In fact, after listening to all of the evidence, it is questionable if there was anyone with a gun at the bus stop that morning.

### 2. Is the Defendant a drug user and violent toward his wife?

The deportation officer testified at the hearing that the Defendant's wife admitted to him that she had made the anonymous tip to ICE, and confirmed that the tip correctly stated her husband used cocaine and was abusive. The Defendant's wife testified at the first hearing and denied these statements. She did not testify at the second hearing. The Court finds the deportation officer's testimony credible regarding his conversations with the Defendant's wife. The Government presented copies of text messages the deportation officer received from the Defendant's wife beginning the morning of April 11, 2014, which appear to plainly demonstrate she was assisting the officer in finding her husband. However, because the tip was made more than three months ago, it is difficult to conclude what the current situation between the Defendant and his wife is. When arrested, the Defendant tested negative for drug use, and he does not have any convictions for drug offenses, assault, or family violence.

### 3. Did the Defendant attempt to influence a witness?

Finally, the Court finds that after the Court entered conditions of release, the Defendant phoned the bus driver and spoke to her about her recollection of the events of April 11, 2014. At the time, the Defendant's attorney and investigator had also attempted to reach her for the same reason. The bus driver testified that the Defendant was very polite in the call, did not threaten her, and repeatedly asked her to tell the truth. She was, however, obviously bothered and annoyed that so many people were calling her about these events, and told the Defendant that he should not be

talking to her.  While it is very concerning that the Defendant contacted the bus driver, the contact did not violate a bond condition, and the contact does not appear to rise to the level of an attempt to obstruct of justice.

### III.  Conclusion

In sum, the Court concludes that the Government has failed to prove by clear and convincing evidence (the standard required by the Bail Reform Act) that the Defendant would pose a risk of danger to the community if allowed to remain on conditions of release.  Further, the Government has not demonstrated that the Defendant poses a risk of flight.  Indeed, the fact that he appeared for the July 30, 2014, hearing after being informed of the Government's contentions demonstrates just the opposite.

For all of the reasons, the Court **DENIED** the Government's Motion for Reconsideration of Detention and Request for Rehearing (Dkt. No. 21).

SIGNED this 31st day of July, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE